IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **EUFRASIO TOLENTINO**, on behalf of himself and all other similarly situated employees, known and unknown, | Civil Action |
| Plaintiff, | |
| v. | |
| **KDD OF ILLINOIS, LTD.** an Illinois corporation, **RMK ENTERPRISES OF ILLINOIS, INC.**, an Illinois corporation, **6201 OGDEN, LLC**, an Illinois limited liability company, **SNAPPY CAR WASH, INC.**, an Illinois corporation, **JOHN DOE COMPANY**, an Illinois or foreign business entity, **ROGER M. KEATON**, individually, **MICHAEL E. DUFFY**, individually, and **SHABBIR AHMED**, individually. | No. |
| Defendants. | JURY DEMAND |

<u>COMPLAINT</u>

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, EUFRASIO TOLENTINO, (the "Plaintiff"), hereby complains of the defendants, KDD OF ILLINOIS, LTD., an Illinois corporation, RMK ENTERPRISES OF ILLINOIS, INC., an Illinois corporation, 6201 OGDEN, LLC, an Illinois limited liability company, SNAPPY CAR WASH, INC., an Illinois corporation, JOHN DOE COMPANY, an Illinois or foreign business entity, ROGER M. KEATON, individually, MICHAEL E. DUFFY, individually, and SHABBIR AHMEND, individually, (the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows.

## I. **INTRODUCTION**

1.      This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay overtime compensation to the Plaintiff; and as a result of the Defendants' failure to pay the Plaintiff wages at a rate not less than the FLSA's minimum wage rate.

2.      The Plaintiff was hired on or about December 16, 2013, to be a car wash attendant at the "Citgo" service station located at 6201 W. Odgen Avenue in Berwyn, Illinois.  Along with other car wash attendants, he worked Monday through Saturday from 11:00 a.m. to 6:00 p.m., and sometimes to 7:00 p.m. (42 – 48 hours per week).  Prior to the commencement of the Plaintiff's employment, the Plaintiff and a manager of the Citgo service station, whom the Plaintiff knew as "Joel," had agreed that the Plaintiff would be paid a fixed salary of $380.00 per week for his labor.  For the labor he performed in the first week of his employment, the Plaintiff was paid $380.00 in cash, plus the tips he received from customers of the car wash (he received an average of about $15.00 per day in tips).

3.      At the end of the second week that the Plaintiff worked however, Joel failed and refused to pay the Plaintiff for his labor altogether, saying that "the boss doesn't have money so you will just have to wait."  As a result, the Plaintiff received only about $15.00 per day in tips for the second week of his labor.  This pattern continued through about May 1, 2014, when the Plaintiff was fired: the Plaintiff worked about the same number of hours each week until May 1, 2014 but, each week, his employers failed and refused to pay him altogether.  After the first week of his employment, the only compensation the Plaintiff received were the tips he received directly from customers.

4.     One or more of the Defendants violated the FLSA because they allowed the Plaintiff to perform work at the Citgo car wash and, by failing to pay him altogether for more than 18 weeks (about December 23, 2013 to about May 1, 2014), they could not have paid him at the FLSA's minimum wage rate; and they also could not have paid him time and one-half overtime compensation for the 2 to 8 overtime (in excess of 40 in any given week) hours he worked each week.

5.     During the Plaintiff's employment at the Citgo service station described above, about 10 additional individuals also worked as car wash attendants with the Plaintiff.

6.     Over the course of numerous weeks, the Defendants allowed these additional individuals to perform work but, just like the Plaintiff, other than the tips they received directly from customers, these individuals did not receive any compensation for their labor in most if not all of the weeks that they worked.

7.     In Count I, the Plaintiff brings a claim for violation of the FLSA.  In Counts II and III, the Plaintiff brings supplemental claims pursuant to the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*  In Count IV the Plaintiff brings a claim for retaliation in violation of the FLSA, and in Counts, V and VI, the Plaintiff brings supplemental claims for retaliation in violation of the IMWL and the IWPCA, respectively.

## II.     THE PARTIES

8.     The Plaintiff is an individual domiciled in Illinois, and resides within the Northern District of Illinois.

3

9.      The following individual defendants are domiciled in Illinois and reside within the Northern District of Illinois, Eastern Division: a) ROGER M. KEATON; and b) SHABBIR AHMED.

10.     MICHAEL E. DUFFY is domiciled in Indiana.

11.     The defendant, KDD OF ILLINOIS, LTD., is an Illinois corporation whose registered office is located at or near 5961 Ridge Ave., Chicago, IL 60660.

12.     The defendant, RMK ENTERPRISES OF ILLINOIS, INC., is an Illinois corporation whose registered office is located at or near 5961 Ridge Ave., Chicago, IL 60660.

13.     The defendant, 6201 OGDEN, LLC, is an Illinois limited liability company whose registered office is located at or near 5961 Ridge Ave., Chicago, IL 60660.

14.     The defendant, SNAPPY CAR WASH, INC., is a dissolved Illinois corporation whose registered office was at all times relevant to this complaint located at or near 5961 Ridge Ave., Chicago, IL 60660.

15.     At all times relevant to this action, the following defendants are and were corporate officers of KDD OF ILLINOIS, LTD.: a) ROGER M. KEATON; and b) MICHAEL E. DUFFY.

16.     At all times relevant to this action, the following defendants are and were corporate officers of RMK ENTERPRISES OF ILLINOIS, INC.: a) ROGER M. KEATON; and b) MICHAEL E. DUFFY.

17.     Upon information and belief, at all times relevant to this action, the following defendants held and hold an ownership interest in KDD OF ILLINOIS, LTD.: a) ROGER M. KEATON; and b) MICHAEL E. DUFFY.

4

18.     Upon information and belief, at all times relevant to this action, the following defendants held and hold an ownership interest in RMK ENTERPRISES OF ILLINOIS, INC.: a) ROGER M. KEATON; and b) MICHAEL E. DUFFY.

19.     At all times relevant to this action, ROGER M. KEATON was and is the managing member of 6201 OGDEN, LLC.

20.     At all times relevant to this action, SHABBIR AHMED was and is a corporate officer of SNAPPY CAR WASH, INC.

21.     Upon information and belief, at all times relevant to this action, the following defendants held and hold an ownership interest in SNAPPY CAR WASH, INC.: a) ROGER M. KEATON; b) MICHAEL E. DUFFY; c) SHABBIR AHMED; d) KDD OF ILLINOIS, LTD.,; and e) RMK ENTERPRISES OF ILLINOIS, INC.

22.     Upon information and belief, at all times relevant to this action, JOHN DOE CORPORATION was and is an affiliate of: a) KDD OF ILLINOIS, LTD.; b) RMK ENTERPRISES OF ILLINOIS, INC.; c) 6201 OGDEN, LLC; and d) SNAPPY CAR WASH, INC.

23.     Upon information and belief, at all times relevant to this action, JOHN DOE COMPANY was and is owned and/or controlled by one or more of the following defendants: a) KDD OF ILLINOIS, LTD.; b) RMK ENTERPRISES OF ILLINOIS, INC.; c) 6201 OGDEN, LLC; d) ROGER M. KEATON; e) MICHAEL E. DUFFY; and f) SHABBIR AHMED.

24.     Upon information and belief, one or more of the following defendants used JOHN DOE COMPANY to operate the Citgo service station and car wash located at 6201 W. Ogden Avenue in Berwyn, Illinois:  a) KDD OF ILLINOIS, LTD.; b) RMK ENTERPRISES OF ILLINOIS, INC.; c) 6201 OGDEN, LLC; d) ROGER M. KEATON; e) MICHAEL E. DUFFY; and f) SHABBIR AHMED.

25.    Upon information and belief, JOHN DOE COMPANY is either: a) an Illinois or foreign corporation; b) an Illinois or foreign limited liability company; c) an Illinois or foreign general partnership; or d) an unincorporated association of persons engaged in the ownership and/or the operation of the Citgo service station and car wash located at 6201 W. Ogden Avenue in Berwyn, Illinois.

## III.  JURISDICTION AND VENUE

26.    Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

27.    Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

28.    Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within the Northern District of Illinois.

## IV.  STATUTORY CONSENT

29.    The Plaintiff brings this case as an "opt-in" collective action under Section 16(b) of the FLSA and, in accordance with Section 16(b), has attached his written consent to be a party plaintiff as **Exhibit A**, which is incorporated herein by reference.

## V.  GENERAL ALLEGATIONS

30.    At all times relevant to this action, ROGER M. KEATON and MICHAEL E. DUFFY were and are business partners or de facto business partners.

31.    At all times relevant to this action, ROGER M. KEATON and MICHAEL E. DUFFY, themselves and/or by using an array of interrelated corporate entities, are and have been engaged in the business of owning and operating numerous gasoline filling stations in Illinois and Indiana (the "Service Station Business").

32.     Many of the gasoline filling stations operated by the Service Station Business include car wash facilities.

33.     The Plaintiff seeks to conditionally certify an "opt-in" class defined as: all individuals who were allowed to work as car wash attendants at any of the filling stations operated by the Service Station Business in the last three years (the "Putative Class").

34.     The Putative Class includes the approximately 10 individuals who worked alongside the Plaintiff at the Citgo service station described above and who, like the Plaintiff, were not compensated by their employers for the labor they performed in many if not most weeks.

35.     At all times relevant to this action, ROGER M. KEATON and MICHAEL E. DUFFY have employed a business model wherein SNAPPY CAR WASH, INC. and SHABBIR AHMED ostensibly operate car wash facilities at certain filling stations operated by the Service Station Business; but, upon information and belief, the economic reality is that ROGER M. KEATON and MICHAEL E. DUFFY control the car wash facilities along with other aspects of the Service Station Business (such as the sale of "Subway" sandwiches and the sale of convenience items).

36.     The profit margin on the sale of gasoline is typically lower than it is on other retail items and, therefore, the Service Station Business' sales strategy includes drawing customers in by offering them gasoline, but then making a larger profit by selling them fast food, convenience items, and services related to vehicular transportation (such as car washes).  That is, the real aim is to sell them items in addition to gasoline and services such as car washes.

7

37.     Failing to compensate employees like the Plaintiff and the Putative Class members, for the work they perform providing car wash services, increases the profits made by one or more of the Defendants who have an ownership interest in the entities that comprise the Service Station Business.

38.     At all times relevant to this action, ROGER M. KEATON and MICHAEL E. DUFFY structured their Service Station Business such that, in most cases, they created a new company to be the face of each retail store that the Service Station Business developed or acquired.  Each of these new companies performed and performs related activities for a common business purpose, specifically: the sale of gasoline at a relatively low profit, to draw customers in who then purchase fast food, convenience items, and services related to vehicular transportation (such as car washes).

39.     At all times relevant to this action, there has been overlap in the oversight, management and facilitation of the various functions performed at the filling stations operated by the Service Station Business; and the Defendants used their array of corporate entities interchangeably within their Service Station Business.  For example, as of July 11, 2014, and for at least 6 months prior thereto:

> a.  one or more of the Defendants were selling gasoline to the general public from the Citgo service station located at 6201 W. Ogden in Berwyn, Illinois, and issuing cash register receipts for the purchase of gasoline under the name "SNAPPY OGDEN CARWASH . . . Snappy #12," which is apparently a fictitious business name that was not and is not registered with the Illinois Secretary of State;

b.  the Citgo service station located at 6201 W. Ogden in Berwyn, Illinois displayed a plaque near the cash register that read "KDD of Illinois, Ltd."

c.  the property upon which the Citgo service station was located at 6201 W. Ogden in Berwyn, Illinois was owned by 6201 OGDEN, LLC;

d.  RMK ENTERPRISES OF ILLINOIS, INC. was the registered owner of the following vehicles that were registered to the address, 6201 W. Ogden, Berwyn, Illinois: i) a 2008 Honda Accord, VIN number 1HGCP26448A028146; ii) a Pace American Michigan tilt tandem style trailer, VIN number 40LFB101XYP058276; iii) another tilt tandem style trailer, VIN number 4PL500C1XW1016220; and iv) a 2013 Honda Pilot, VIN number 5FNYF3H60DB025709 (ROGER M. KEATON was the registered co-owner of this vehicle at the same registered address).

40.  At all times relevant to this action, the filling stations that comprised the Service Station Business were managed centrally by the Defendants, whether or not these various filling stations were tied to separate corporations or limited liability companies.

41.  At all times relevant to this action, the following business entities are and/or were part of the Defendants' Service Station Business:

a.  KDD OF ILLINOIS, LTD.;
b.  RMK ENTERPRISES OF ILLINOIS, INC.;
c.  6201 OGDEN, LLC;
d.  SNAPPY CAR WASH, INC.;
e.  GAK of Illinois, Ltd.;
f.  SNK of Illinois, Ltd.;
g.  AMK of Illinois, Ltd.;
h.  3150 S. Cicero Corp.;
i.  2800 Lawrence Corp.;
j.  3960 Irving Corp.;
k.  1750 N. Western Corp.;

      l.   Harlem & Bloomingdale Corp.;
      m.  3600 S. Kedzie Corp.;
      n.   5114 S. Pulaski Corp.;
      o.   3820 S. Archer Corp.;
      p.   18659 S. Halsted Corp.;
      q.   RMK Distribution, Inc.;
      r.   4400 N. Mannheim, LLC;
      s.   RMK of Des Plaines, LLC;
      t.   RMK of Alsip, LLC; and
      u.   JOHN DOE COMPANY.

42.    Upon information and belief, at all times relevant to this action, additional business entities were and are part of the Defendants' Service Station Business.

43.    Upon information and belief, at all times relevant to this action, the respective control groups of the business entities identified above in paragraphs 41 and 42 (the "Corporate Entities") were and are dominated by ROGER M. KEATON and MICHAEL E. DUFFY.

44.    Upon information and belief, at all times relevant to this action, the respective control groups of the Corporate Entities consisted and consist of substantially the same, if not an identical, group of individuals.

45.    Upon information and belief, as exemplified by the allegations in paragraph 39 above, ROGER M. KEATON and MICHAEL E. DUFFY operate and operated the Corporate Entities as if they were a single company, mixing, matching, moving and sharing resources from a location associated with one of the Corporate Entities to other locations associated with other Corporate Entities.

46.    Upon information and belief, at all times relevant to this action, the respective administrative staffs of the Corporate Entities consisted and consist of substantially the same, if not an identical, group of individuals.

47.     Upon information and belief, at all times relevant to this action, the books and records of the Corporate Entities are and were kept in the same, central locations.

48.     Upon information and belief, at all times relevant to this action, the Defendants used and use the same computer system, server or computer network, to keep the books of the Corporate Entities.

49.     Upon information and belief, at all times relevant to this action, the respective sets of data, which constitute the books the Corporate Entities, resided and reside on the same computer system, server or computer network.

50.     Upon information and belief, at all times relevant to this action, the same individual, or group of individuals, has/have performed the routine, day-to-day bookkeeping functions of the Corporate Entities.

51.     The defendant KDD OF ILLINOIS, LTD. had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; and d) 2015.

52.     The defendant RMK ENTERPRISES OF ILLINOIS, INC. had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; and d) 2015.

53.     The defendant 6201 OGDEN, LLC had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; and d) 2015.

54.     The defendant SNAPPY CAR WASH, INC. had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; and d) 2015.

55.     The defendant JOHN DOE COMPANY had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; and d) 2015.

56.     The Defendants' Service Station Business had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; and d) 2015.

11

57.    Given the allegations above, at all times relevant to this action, the Defendants' Service Station Business operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA.

58.    The Defendants' Service Station Business operates numerous service stations that include car wash facilities, and has done so for at least several years prior to the commencement of the Plaintiff's employment at the Citgo service station located at 6201 W. Ogden Avenue in Berwyn, Illinois.  As such, when the Plaintiff began his employment, the Defendants were familiar with, or should have been familiar with, the budgetary requirements of a car wash facility like the one at the Citgo service station located at 6201 W. Ogden Avenue in Berwyn, Illinois.

59.    The Defendants allowed the Plaintiff and some of the Putative Class members to work as car wash attendants at the Citgo service station located at 6201 W. Ogden Avenue in Berwyn, Illinois, but then failed and refused to adequately fund the business entity that directly operated the car wash located there, JOHN DOE COMPANY; and, as a result, the Plaintiff and the Putative Class members were allowed to perform labor without compensation over the course of numerous weeks.

60.    The Plaintiff and the Putative Class members are generally unskilled, uneducated, often unable to communicate effectively in English, and are members of the lowest socioeconomic stratum; and the Defendants were and are well aware of this.

61.    At all times relevant to this action, the Defendants were aware that car wash attendants customarily receive tips directly from customers.

62.    At all times relevant to this action, the Defendants were aware that, even if they failed to pay the Plaintiff and the Putative Class members, many workers in that

12

demographic (at the lowest socioeconomic stratum, and often desperate to make any kind of living) would nonetheless continue working just in order to receive tips.

63.     Upon information and belief, the Defendants set JOHN DOE COMPANY up as an intermediary between themselves and the Plaintiff, and between themselves and some of the Putative Class members, in an attempt to improperly shield themselves from wage and hour liability in the manner described above – allowing it to operate and employ workers such as the Plaintiff, while at the same time causing it to be underfunded and unable to pay wages to the Plaintiff.

64.     When the Plaintiff and the Putative Class members *were* paid (as in the first week of the Plaintiff's employment described above), the Defendants allowed them to be paid in cash, and failed to issue them pay stubs or any other documentation incident to their employment.  The Defendants did this in an improper attempt to further shield themselves from wage and hour liability – in other words, they did it in order to provide themselves the opportunity to deny that the Plaintiff and the Putative Class members were ever employed.

65.     The scheme described above allowed the Defendants' Service Station Business to improperly and unjustly benefit from the labor of the Plaintiff and the Putative Class members, without paying them proper compensation at rates not less than the applicable minimum wage.

66.     At all times relevant to this action, one or more of the Defendants were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the

employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

67.     At all times relevant to this action, one or more of the Defendants were and are the Putative Class members' "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

68.     At all times relevant to this action, one or more of the Defendants were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

69.     Given the number of individuals and entities apparently involved in the operation of the Citgo service station located at 6201 W. Ogden Avenue in Berwyn, Illinois and, given that the Plaintiff did not receive pay stubs or other documentation in connection with his employment, it is plausible that he is not able to specifically identify his employers at this stage of the case.[1]

70.     Upon information and belief, after the Plaintiff was fired on May 1, 2014, the Defendants continued to utilize the scheme described herein, in order to avoid paying the Putative Class members in accordance with the requirements of the FLSA, the IMWL and

---

[1] *See for example Sanchez v. Haltz Constr., Inc.*, 2012 U.S. Dist. LEXIS 537 *2-3 (N.D. Ill. 2012).

the IWPCA.; and, upon information and belief, they continue to do so through the present day.

## COUNT I
### (Violation of the FLSA)

71.     The Plaintiff hereby re-alleges the foregoing paragraphs.

72.     During the course of his employment by the Defendants, the Plaintiff and the Putative Class members handled goods that moved in interstate commerce including but not limited to carnuba wax, Rain-X, Windex, glass cleaner, other cleaning solvents, cloth towels and disposable paper products.

73.     Among other ways, the Defendants violated the FLSA by:

    a.  failing to pay the Plaintiff and the Putative Class members for certain hours they worked at a rate not less than the FLSA's mandatory minimum rate;

    b.  failing to pay the Plaintiff and the Putative Class members for certain overtime (in excess of 40 in a given workweek) hours at a rate not less than one and one-half times the regular rate at which they were employed; and

    c.  failing to provide the Plaintiff and the Putative Class members with pay stubs that accurately recorded their respective hourly rates and the respective number of hours they worked each week.

74.     The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

75.     The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

76.     As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiff and the Putative Class members were damaged in that they suffered pecuniary

loss, namely, the unpaid minimum wages and overtime compensation to which they were and are entitled under the FLSA.

WHEREFORE, on behalf of himself and the Putative Class, the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid minimum wages due and owing to the plaintiffs for each hour the plaintiffs worked, but for which the Defendants failed to pay the plaintiffs at a rate not less than the FLSA's mandatory minimum rate;

B.  damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at a rate not less than one and one-half times the regular rate at which the plaintiffs were employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

C.  statutory liquidated damages as allowed by the FLSA;

D.  interest on all amounts awarded;

E.  attorneys' fees, together with costs of suit and collection;

F.  such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

77.  The Plaintiff hereby re-alleges the foregoing allegations.

78.  Among other ways, the Defendants violated the IMWL by:

a.  failing to pay the Plaintiff for certain hours he worked at a rate not less than the IMWL's mandatory minimum rate;

b.  failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate not less than one and one-half times the regular rate at which they were employed; and

16

    c.   failing to provide the Plaintiff with pay stubs that accurately recorded his hourly rate and the number of hours he worked each week.

79.    The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

80.    The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

81.    As a direct and proximate result of the Defendants' violation of the IMWL, the Plaintiff was damaged in that he suffered pecuniary loss, namely, the unpaid minimum wages and overtime compensation to which he was and is entitled under the IMWL.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A.   damages in an amount equal to the unpaid minimum wages due and owing to the Plaintiff for each hour the Plaintiff worked, but for which the Defendants failed to pay the Plaintiff at a rate not less than the IMWL's mandatory minimum rate;

B.   damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times the regular rate at which the Plaintiff was employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

C.   statutory punitive damages as allowed by the IMWL;

D.   interest on all amounts awarded;

E.   attorneys' fees, together with costs of suit and collection; and

F.   such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the IWPCA)

82.    The Plaintiff hereby re-alleges the foregoing allegations.

83. The Plaintiff brings this Count III as an "opt-in" representative action under Section 11 of the IWPCA.

84. Among other ways, the Defendants violated the IWPCA by:

   a. failing to pay the Plaintiff altogether for about 18 weeks of work when, as described above, the parties had agreed that the Plaintiff's compensation would be a fixed salary $380.00 per week; and

   b. failing to pay the Putative Class members altogether for numerous weeks of work when, as described above, the parties had agreed that each of the Putative Class members' compensation would be a fixed, weekly salary, in respective amounts to be shown by the evidence.

85. As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiff and the Putative Class members were damaged in that they suffered pecuniary loss, namely, the unpaid wages to which they were and are entitled to be paid under the parties' respective agreements and, therefore, under the IWPCA.

WHEREFORE, on behalf of himself and the Putative Class, the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

   A. damages in an amount equal to the unpaid wages and owing to the plaintiffs for each week the plaintiffs worked but for which the Defendants failed to pay the plaintiffs at a rate not less than that which the parties had agreed;

   B. interest on all amounts awarded;

   C. attorneys' fees together with costs of suit and collection; and

   D. such further relief as may be fair and just in the premises.

## COUNT IV
### (Retaliation in Violation of the FLSA)

86. The Plaintiff hereby re-alleges the foregoing paragraphs.

87.     On numerous occasions prior to May 1, 2014, the Plaintiff had complained to a manager of the Citgo service station described above that he was not being paid for the work he was performing – and he was therefore by default complaining that he was not being paid at the FLSA's minimum wage.

88.     On or about May 1, 2014, the Plaintiff finally made an oral demand, to a manager of the Citgo service station described above, that he be paid for the work he had performed in the previous 18 weeks.

89.     On or about May 1, 2014, immediately after the Plaintiff demanded that he be paid for the work he had performed, he was fired by "Joel," a manager at the Citgo service station described above.

90.      On or about May 1, 2014, and during the course of his employment by the Defendants, the Plaintiff performed his job duties satisfactorily or better.

91.     On or about May 1, 2014, the Defendants had no legitimate reason to fire the Plaintiff.

92.     On or about May 1, 2014, the Defendants fired the Plaintiff in order to retaliate against him for demanding that he be paid for his work, and in order to make an example of him to discourage the Putative Class members from complaining as well.

93.     When the Plaintiff demanded to be paid for the work he had performed, he was engaging in protected activity under the FLSA.

94.     The Defendants violated the FLSA by firing the Plaintiff in retaliation for demanding that he be paid for the work he had performed.

95.     As a direct and proximate result of the Defendants' actions, the Plaintiff was damages in that he suffered pecuniary loss, including but not limited to lost wages.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A.  make-whole damages including but not limited to reinstatement, back-pay and front-pay in lieu of reinstatement;

B.  compensatory damages;

C.  punitive damages;

D.  such equitable relief as to make the Plaintiffs whole and balance the equities;

E.  interest on all monetary amounts awarded;

F.  attorneys' fees, together with costs of suit and collection; and

G.  such further relief as may be fair and just in the premises.

## COUNT V
### (Retaliation in Violation of the IMWL)

96.    The Plaintiff hereby re-alleges the foregoing paragraphs.

97.    On numerous occasions prior to May 1, 2014, the Plaintiff had complained to a manager of the Citgo service station described above that he was not being paid for the work he was performing – and he was therefore by default complaining that he was not being paid at the IMWL's minimum wage.

98.    When the Plaintiff demanded to be paid for the work he had performed, he was engaging in protected activity under the IMWL.

99.    The Defendants violated the IMWL by firing the Plaintiff in retaliation for demanding that he be paid for the work he had performed.

WHEREFORE, the Plaintiff prays for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A.  make-whole damages including but not limited to reinstatement, back-pay and front-pay in lieu of reinstatement;

B.  compensatory damages;

C.  punitive damages;

D.  such equitable relief as to make the Plaintiffs whole and balance the equities;

E.  interest on all monetary amounts awarded;

F.  attorneys' fees, together with costs of suit and collection; and

G.  such further relief as may be fair and just in the premises.

## COUNT VI
### (Retaliation in Violation of the IWPCA)

100.    The Plaintiff hereby re-alleges the foregoing paragraphs.

101.    On numerous occasions prior to May 1, 2014, the Plaintiff had complained to a manager of the Citgo service station described above that he was not being paid for the work he was performing in accordance with the parties' prior agreement.

102.    When the Plaintiff demanded to be paid for the work he had performed, in accordance with the parties' prior agreement, he was engaging in protected activity under the IWPCA.

103.    The Defendants violated the IWPCA by firing the Plaintiff in retaliation for demanding that he be paid for the work he had performed.

WHEREFORE, the Plaintiff prays for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A.  make-whole damages including but not limited to reinstatement, back-pay and front-pay in lieu of reinstatement;

B.  compensatory damages;

C.  punitive damages;

D.  such equitable relief as to make the Plaintiffs whole and balance the equities;

E.  interest on all monetary amounts awarded;

F.  attorneys' fees, together with costs of suit and collection; and

such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

_/s/Paul Luka_____
One of the Plaintiff's Attorneys

Paul Luka
Law Office of Paul Luka, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 971-7309
paul@lukapc.com

# EXHIBIT
# A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages the Law Office of Paul Luka, P.C., to pursue his/her claims for unpaid wages, and other relief, against Snappy Ogden Carwash, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_Ec8oocC3Q_____

Signature

_EcJ7oocC7Q_____

Print Name